**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARGARET A. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-291 Erie |
| ) | |
| v. ) | |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN, J.

Plaintiff, Margaret A. Carter, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that she was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Carter protectively filed an application for SSI on May 1, 2002 alleging that she was disabled since May 1, 2002 due to bipolar disorder (Administrative Record, hereinafter "AR", at 79-83, 93). Her application was denied initially, and Carter requested a hearing before an administrative law judge ("ALJ") (AR 70-73, 75). A hearing was held on April 8, 2003, and following this hearing, the ALJ found that Carter was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 35-52, 161-165). Carter requested review by the Appeals Council, and on August 8, 2003, the Appeals Council remanded the decision to the ALJ for further administrative action (AR 166-171).

A supplemental hearing was held on January 14, 2004, and following this hearing, the ALJ again found that Carter was not disabled at any time through the date of his decision and therefore was not eligible for SSI benefits (AR 14-22). Carter's request for review by the Appeals Council was denied (AR 7-9), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons that follow, we will deny Plaintiff's motion and grant Defendant's motion.

1

## I. BACKGROUND

Carter was born on July 23, 1960 and was forty-three years old at the time of the second administrative decision (AR 15, 79). She had a high school education, with a past relevant work history as a cashier and sales clerk (AR 94).

Carter began treatment with Jennifer Pasternak, M.D., Ph.D., for bipolar disorder on September 24, 2001 (AR 130-132). Carter reported a history of psychiatric trouble and a prior use of Zoloft (AR 130). She denied being depressed and reported she could manage at work, but her husband described her function as poor (AR 130). She suffered from nightmares, restless sleep, and a decreased appetite, but her energy level was "ok" (AR 130). Carter reported her main problem as "confusion" (AR 130). On mental status examination, Dr. Pasternak indicted that she appeared extremely restless, hesitant, and had trouble answering questions (AR 131). Carter was unable to describe her mood, and Dr. Pasternak noted that her affect was constricted and "kind of bizarre" (AR 131). Her speech was normal in rate and volume but disorganized and rambling (AR 131). Dr. Pasternak found that her insight was fair to good, and her judgment was fair (AR 131). She was diagnosed with bipolar disorder, manic with psychotic features, and assigned a current Global Assessment of Functioning (GAF) score of 30 (AR 131-132).[1] Dr. Pasternak increased her Zyprexa (AR 132).

Carter returned to Dr. Pasternak on October 1, 2001 and reported that she was doing better although she was not back to normal (AR 129). She was sleeping better with Zyprexa and had no problem tolerating it (AR 129). Her speech was still mildly disorganized but it was much less pressured and easier to understand (AR 129). Dr. Pasternak assessed bipolar manic, showing some improvement, and gave Carter an excuse to remain off work for six weeks to recover adequately (AR 129). On October 19, 2001, Carter reported that overall she continued to do better, with no more odd thoughts and she was sleeping through the night (AR 128). She

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 21 and 30 indicate "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends). *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

claimed she was still irritable at times and became angry at her family for doing chores she felt she should be doing, but was, however, able to do more around the house (AR 128).  Dr. Pasternak noted that her affect was slightly dysphoric, but found no evidence of disorganization, and noted that Carter was able to tell a long and complex story without difficulty (AR 128).  Dr. Pasternak discussed adding another mood stabilizer, but Carter preferred one medication, so Dr. Pasternak increased her Zyprexa dosage (AR 128).

On October 29, 2001, Carter reported she felt a little better, was less irritable, was sleeping well, and was wanting to do more for herself than she used to (AR 127).  She reportedly felt almost ready to go back to work after her trip to Las Vegas (AR 127).  Dr. Pasternak reported that her speech was coherent, although slightly hesitant (AR 127).  She was "much improved" in her concentration, with no evidence of anxiety, dysphoria or euphoria (AR 127).  Dr. Pasternak opined that her bipolar disorder was "stabilizing" on Zyprexa, and advised her to be careful about gambling since her judgment was likely to be still impaired by the mania (AR 127).

On November 29, 2001, Carter reported that she had a good time on her vacation, but since her return she had started sleeping 18 hours a day (AR 126).  She had returned to work, and Dr. Pasternak noted that she appeared anxious about going back to work (AR 126).  She was coherent and able to tell about her vacation with an organized train of thought (AR 126).  She was able to concentrate, but had some mild anxiety (AR 126).  Her dosage of Zyprexa was decreased (AR 126).

On December 28, 2001, Carter reported being depressed with suicidal ideations (AR 125).  She claimed she was sleeping all the time, was tearful, frightened, and not interested in anything (AR 125).  Dr. Pasternak noted her affect was dysorphoric and nearly tearful, but her speech was organized without any evidence of psychosis (AR 125).  She assessed bipolar disorder, previously manic with psychotic features, now depressed (AR 125).  Voluntary hospitalization was discussed, and Dr. Pasternak increased her Zyprexa and started her on a trial of Celexa to target her depression and anxiety (AR 125).

Carter returned to Dr. Pasternak on January 11, 2002 and reported that hospitalization for a couple of days had been helpful (AR 125).  While hospitalized, she had been started on Wellbutrin which she felt was helpful (AR 124).  Carter described feeling overwhelmed at home

and at work, but stated she was working through it "ok," and felt much better with no further suicidal thoughts (AR 124). Dr. Pasternak found her affect mildly dysphoric with no evidence of disorganization (AR 124). She assessed bipolar disorder with recent psychotic mania, with some residual depressive symptoms (AR 124). She was continued on Wellbutrin and Zyprexa (AR 124). Dr. Pasternak discussed with Carter her recommendation that she engage in psychotherapy, but Carter felt uncomfortable with this suggestion (AR 124).

On February 11, 2002, Carter's main complaint was a lack of energy and reportedly could not always get through her day at work (AR 123). Dr. Pasternak noted that Carter had called her previously expressing suicidal thoughts, but an aunt had been able to dispel them without difficulty (AR 123). Dr. Pasternak found her affect mildly dysphoric with mild to moderate psychomotor retardation, but her speech was coherent with no evidence of disorganization (AR 123). She was assessed with bipolar disorder with periods of abnormal thinking (AR 123). Dr. Pasternak increased her Zyprexa and continued her Wellbutrin (AR 123). Carter continued to claim she had no energy when seen on March 11, 2002 (AR 122). She further claimed that work was a real effort (AR 122). She had rare suicidal thoughts when she became discouraged (AR 122). Her affect was dysphoric, but her speech was coherent and goal directed (AR 122). Dr. Pasternak increased her Wellbutrin and continued the Zyprexa (AR 122). Carter declined hospitalization (AR 122).

On March 29, 2002, Carter reported feeling better, and while her concentration was still "up and down," overall she had more energy and more motivation (AR 121). Her suicidal thoughts and sleep problems had resolved, although she was sometimes "a little restless" (AR 121). Her affect was still constricted but more reactive, she appeared less uncomfortable, and her speech was coherent and goal directed (AR 121). Dr. Pasternak diagnosed bipolar disorder depressed, with beginning early response to Wellbutrin (AR 121).

On April 11, 2002, Carter reported that she was "not doing that well," in that she was depressed and had suicidal thoughts again (AR 120). She found it hard to concentrate at work, her thinking was not as clear, and she had a hard time telling Dr. Pasternak what medications she was on (AR 120). Dr. Pasternak noted Carter's affect was dysphoric, more constricted and she appeared frightened or uncomfortable (AR 120). She also exhibited some minimal

disorganization in her speech (AR 120).  She was diagnosed with bipolar disorder depressed, with some increased disorganization (AR 120).  At Carter's request, Dr. Pasternak stopped the Wellbutrin and started her on Zoloft (AR 120).  On April 26, 2002, she reported doing better with clearer thinking, but she was still depressed (AR 119).  She denied any suicidal thoughts (AR 119).  Dr. Pasternak noted she was dysphoric with some poverty of speech, but there was no evidence of disorganization and her affect was less constricted (AR 119).  Dr. Pasternak felt Carter did better on a higher dose of Zyprexa, and she continued her on Zyprexa and Zoloft (AR 119).  Dr. Pasternak supported Carter's decision to quit work (AR 119).

By May 20, 2002, Carter was doing better on the higher dose of Zyprexa (AR 118).  She felt less depressed, was able to get more done and was sleeping less (AR 118).  Dr. Pasternak noted that overall she was doing somewhat better and had no problems with the Zoloft (AR 118).  Her affect continued to be dysphoric but her speech was well organized without distress or confusion (AR 118).  Her medications were continued (AR 118).

Carter continued to report improvement in her condition on June 24, 2002 (AR 157).  She stated that she felt like herself much of the time but was still easily overwhelmed (AR 157).  She had no suicidal ideation, no significant depression, no evidence of euphoria or return of any manic symptoms, and was much more active (AR 157).  Carter's speech was coherent and goal directed, her answers were more complete, and her affect brightened when discussing a future trip to Las Vegas (AR 157).  Dr. Pasternak diagnosed bipolar disorder, improving, and continued her medications (AR 157).

On July 11, 2002, Larry Smith, Ph.D., a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment form (AR 133-135).  Dr. Smith concluded that Carter was not significantly limited in a number of areas, but was moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; accept

criticism from supervisors; get along with coworkers; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation (AR 133-134). In making this evaluation, Dr. Smith noted that the medical evidence showed that Carter was socially appropriate on evaluation; cognitively intact; capable of performing household chores and other activities of daily living; and able to understand, retain and follow instructions and perform routine work tasks (AR 135). He accepted and gave "great weight" to the opinions of Dr. Pasternak (AR 135). On a Psychiatric Review Technique form completed the same date, Dr. Smith concluded that Carter had a mild degree of limitation in her activities of daily living, with a moderate degree of difficulty in social functioning and in maintaining concentration, persistence or pace (AR 142).

On August 12, 2002, Carter reported that she had a good time in Las Vegas and continued to feel better (AR 156). She denied any depression or suicidal thoughts and her concentration was good (AR 156). Dr. Pasternak noted that she appeared less nervous and there was no evidence of disorganization (AR 156).

On October 11, 2002, Carter claimed that she was not doing as well as last time in that her thinking was not as clear and she became confused at times (AR 155). Her affect was more constricted and Dr. Pasternak found that she seemed to be processing somewhat more slowly with increased psychomotor retardation (AR 155). She was not anxious or frankly disorganized (AR 155). Dr. Pasternak found a slight increase in her thought disorder with intolerable weight gain on Zyprexa (AR 155). She recommend a trial of Geodon (AR 155).

Carter reportedly felt the same on November 1, 2002, with no real improvement in her concentration or focus (AR 154). Her affect continued to be constricted but she broadened when asked about it (AR 154). She was assessed with bipolar disorder with some mild thought disorder tolerating Geodon (AR 154). On December 5, 2002, there was no evidence of increased thought disorder, her appetite was more normal, and her depression was still present but she had no suicidal ideation (AR 153). Dr. Pasternak increased her Geodon and continued her on Zoloft (AR 153). On December 26, 2002, Carter informed Dr. Pasternak that her primary care physician had discontinued her Zyprexa due to a problem with her sugar while she was in the hospital being treated for an E-coli infection (AR 152). Carter denied excess depression and

6

thought her mood was better (AR 152). Dr. Pasternak noted that her affect was initially constricted but she laughed spontaneously and appropriately a couple of times (AR 152). There was no evidence of mania or over brightness of mood (AR 152). She was continued on Geodon and Zoloft (AR 152).

On January 2, 2003, Carter claimed she was getting quite confused again since the Zyprexa was stopped abruptly when she was hospitalized (AR 151). Dr. Pasternak reported that when Carter had called her previously, she recommended that she restart the Zyprexa at a low dose since Carter was becoming more psychotic (AR 151). Her concentration improved after a few days on the Zyprexa, she denied any depression, and there was no evidence of mania (AR 151). Dr. Pasternak noted an increase in psychosis since the Zyprexa was stopped (AR 151).

Carter reported on January 16, 2003 that her thinking was clearer since going back to Zyprexa and discontinuing the Geodon (AR 150). She denied any depression and felt she was doing "ok" (AR 150). Dr. Pasternak indicated that she was medically restabilized (AR 150). Carter was engaged during the exam, was able to answer questions appropriately and did not appear confused in any way (AR 150). Dr. Pasternak changed her medication from Zyprexa to Risperidone since the Zyprexa may have induced hyperglycemia, and continued the Zoloft (AR 150-151).

By January 27, 2003, Carter was doing much better (AR 149). She had better focus, a normal appetite, no depression and no evidence of manic breakthrough (AR 149). Dr. Pasternak reported that her affect was much more normal and reactive, her focus was obviously better, and she exhibited coherent speech (AR 149). There was no evidence of disorganization, no cogwheeling was present and none could be elicited (AR 149). Dr. Pasternak opined that she was tolerating well the medication change (AR 149). On February 18, 2003, Dr. Pasternak reported that Carter's affect was more reactive than she had seen in quite some time (AR 196). There was no evidence of mania or suicidal ideation, and her speech was coherent and goal directed (AR 196). Her focus was good and there was no evidence of cogwheeling (AR 196). Dr. Pasternak opined that Carter's psychosis was resolved and her mood reasonably stable, but she still had a very low motivation level (AR 196). She continued her on Risperidone and Zoloft (AR 196).

In a medical source statement of Carter's ability to engage in work-related activities dated March 3, 2003, Dr. Pasternak opined that Carter had a good ability to maintain personal appearance; a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, maintain attention/concentration, understand, remember, and carry out simple job instructions, relate predictably in social situations, and demonstrate reliability; and a poor ability to deal with work stresses, function independently, understand, remember, and carry out complex job instructions and behave in an emotionally stable manner (AR 146-147). Dr. Pasternak noted that Carter's concentration was impaired, and that she tended to be easily overwhelmed and withdrawn when under stress, and her thoughts became "disordered" (AR 147).

On March 17, 2003, Carter reported she was not doing as well, and spent all of her free time in bed (AR 195). She claimed she had trouble organizing herself, and her focus was adequate about five days a week (AR 195). There was no evidence of mania, she denied being depressed and had no suicidal ideation (AR 195). Her affect was constricted and her speech was coherent but with some poverty (AR 195). There was no cogwheeling at rest, but cogwheeling was elicited at the wrist (AR 195). Dr. Pasternak assessed bipolar disorder with decreased ability to function on a moderate to high dose of Risperidone (AR 195). Dr. Pasternak decreased her Risperidone since it caused a negative syndrome and continued her on the Zoloft (AR 195). On April 7, 2003, Dr. Pasternak started Carter on a trial of Tegretol and discussed the possibility of eventually decreasing the Risperidone and Zoloft (AR 194). Carter's focus was better, her affect was much less constricted, and her speech was coherent and goal directed (AR 194).

Carter reported feeling quite a bit better on the Tegretol, and noticed an improvement quickly following a dosage increase (AR 193). Her thinking was clearer, and she was less overwhelmed and able to do more (AR 193). Dr. Pasternak indicated that her mood was good and stable (AR 193). On June 9, 2003, Carter told Dr. Pasternak that she had a great time on her most recent trip to Las Vegas and was also doing "ok" since returning home (AR 192). She had no problem with depression or confusion, and had no trouble focusing (AR 192). Her affect was more reactive, and her speech was coherent and goal directed (AR 192). Dr. Pasternak felt she had some improvement with the Tegretol (AR 192). On July 7, 2003, Carter reported more

fatigue, but had no manic or hypomanic symptoms (AR 191). Her affect was more dysphoric but still somewhat reactive, her speech was coherent and goal directed, and there was no cogwheeling (AR 191). She had fleeting suicidal ideation without plan or intent (AR 191). Dr. Pasternak suspected her depression was the result of discontinuing the Zoloft, and restarted the Zoloft (AR 191).

When seen by Dr. Pasternak on August 4, 2003, Carter was feeling quite better and her depression was mostly gone (AR 190). Her energy was slightly better, she had no suicidal ideation, and her appetite and weight were stable (AR 190). Dr. Pasternak found her engaged with a mildly constricted affect, with no evidence of mood lability or disorganization (AR 190). Her depression was improving, and she was continued on Tegretol, Zoloft and Risperidone (AR 190). Carter reported that her mood swings were under control on August 29, 2003 (AR 189). She had no problem with depression and was sleeping less (AR 189). She felt she was much better than a year ago (AR 189). She still had episodes of confusion where she was unable to get anything done (AR 189). She had no side effects or other problems with her medication (AR 189). Dr. Pasternak indicated that Carter had improvements in mood swings on the Tegretol, but still had periods of what sounded like some mild disorganization or cognitive slowing (AR 189).

On October 6, 2003, Carter complained that she was feeling more tired (AR 188). Her periods of confusion were gone and her mood swings were under good control (AR 188). Her affect was more blunted and she appeared tired and sedated (AR 188). Her speech was coherent and goal directed with no evidence of confusion (AR 188). Dr. Pasterak felt she was oversedated on the higher dose of Risperidone and decreased her dosage (AR 188). She continued the Tegretol and Zoloft, and started a trial of Abilify (AR 188). On November 3, 2003, Carter informed Dr. Pasternak that she had not started the Abilify because she was having good results with her current regime (AR 187). She denied feeling overly tired, and only had confusion once a week which was not as severe (AR 187). She had no problems with depression or her temper (AR 187). Her affect was more reactive than it had been, and her speech was more spontaneous (AR 187). Dr. Pasternak opined that her bipolar disorder was better with a decrease in her antipsychotic medication (AR 187).

Finally, Dr. Pasternak completed a second medical source statement of Carter's ability to

engage in work-related activities on December 15, 2003 (AR 184-186). Dr. Pasternak opined that Carter had a good ability to follow work rules; a fair ability to relate to coworkers, interact with supervisors, function independently, understand, remember, and carry out simple job instructions, maintain personal appearance, and behave in an emotionally stable manner; a poor ability to deal with the public, use judgment, deal with work stresses, maintain attention/concentration, relate predictably in social situations and demonstrate reliability; and no ability to understand, remember, and carry out complex job instructions (AR 184-185). Dr. Pasternak stated that Carter suffered from bipolar disorder, continued to have periods of confusion and was easily overwhelmed by stress, becoming unable to function (AR 185).

     Carter testified at the first hearing held by the ALJ on April 8, 2003, that she suffered from depression and saw a psychiatrist every two to three weeks (AR 42-43). She stated that she did not feel her medication had helped her condition at all, but that her psychiatrist was going to change her medication regime (AR 43-44). She claimed she was unable to concentrate, became confused, and experienced sleep difficulties (AR 44). She was able to drive, maintain personal hygiene, and had no difficulty getting along with people (AR 42, 44-45). She stated she was unable to perform routine household chores due to a lack of focus on certain tasks, but was able to grocery shop and go the VFW club and socialize approximately three times per week (AR 45, 47-48, 50).

     Carter and Karen Krull, a vocational expert, testified at the supplemental hearing held by the ALJ on January 14, 2004 (AR 53-66). Carter testified that her mental condition had improved since the last hearing, and that her medication seemed to be helping, but she was still unable to work (AR 57-58-59). She became a "little confused" at times, but not as much as in the past (AR 59). She claimed she constantly worried about death, and experienced attention and concentration problems (AR 59). Carter testified that she was however, able to concentrate on a magazine article from beginning to end and remember what she read, and was able to follow a television program from beginning to end and understand what happened (AR 60). She was able to perform household chores, but not every day due to confusion and concentration problems (AR 61-62). Carter indicated that her sleep difficulties had improved (AR 62). She continued to occasionally go to the VFW with her husband (AR 63).

The ALJ asked the vocational expert if work existed for an individual of Carter's age, education and past work experience, who had no exertional limitations, but needed to perform a job that was simple and repetitive in nature, requiring no more than incidental interaction with the public, who could not perform team-type activities, and who was not able to engage in high stress type work requiring high quotas or adherence to close quality production standards (AR 64). The vocational expert testified that such an individual could perform work as a janitor/cleaner, laundry worker and kitchen worker (AR 65).

Following the supplemental hearing, the ALJ issued a written decision which found that Carter was not eligible for SSI benefits within the meaning of the Social Security Act (AR 14-22). Carter's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 7-9). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical

11

> impairment, the [Commissioner] determines (3) whether the
> impairment is equivalent to an impairment listed by the
> [Commissioner] as creating a presumption of disability. *Bowen,*
> 482 U.S. at 141.  If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past. *Id.* If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs
> in the national economy that the claimant can perform. *Ferguson
> v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ resolved Carter's case at the fifth step.  At step two, the ALJ determined that her bipolar disorder was a severe impairment, but determined at step three that she did not meet a listing (AR 15-16).  At step four, the ALJ determined that she was unable to return to her past relevant work, but retained the residual functional capacity to perform work that was simple and repetitive in nature, requiring no more than incidental interaction with the public, did not require team-type activities and high stress type work requiring high quotas or adherence to close quality production standards (AR 19).  At the final step, the ALJ determined that Carter could perform the jobs cited by the vocational expert at the administrative hearing (AR 21).  The ALJ additionally determined that her statements concerning her impairment and its impact on her ability to work were not entirely credible (AR 22).  Again, we must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Carter contends, in essence, that her mental impairment precludes her from working and that the ALJ's conclusion to the contrary is unsupported by substantial evidence.  She argues that the ALJ ignored certain medical evidence in violation of *Cotter v. Harris*, 642 F.2d 700 (3rd Cir. 1981), and selectively read the medical evidence in refusing to accord proper weight to Dr. Pasternak's medical opinion.  We have carefully reviewed the record and find that Carter's arguments are without merit.

Carter first argues that the ALJ ignored certain evidence in violation of *Cotter v. Harris*, 642 F.2d 700 (3rd Cir. 1981).  *Cotter* dictates that the "administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  The Third Circuit further explains:

> In our view an examiner's findings should be as comprehensive
> and analytical as feasible and, where appropriate, should include a
> statement of subordinate factual foundations on which ultimate
> factual conclusions are based, so that a reviewing court may know

> the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the ... decision is supported by substantial evidence.

*Cotter*, 642 F.2d at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974)).

Carter argues that the ALJ failed to mention three visits with Dr. Pasternak which support her disability claim. Specifically not discussed by the ALJ are Dr. Pasternak's treatment notes dated November 29, 2001, December 28, 2001 and October 11, 2002. These visits summarily reflect that Carter was sleeping up to 18 hours per day, was anxious about returning to work after vacation, had mild anxiety and suicidal ideations, was tearful, frightened and confused at times (AR 125-126, 155). We are of the opinion that such omission does not dictate a remand. Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every finding contained in a report. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3rd Cir. 2001) (ALJ not required to discuss every treatment note). Furthermore, Dr. Pasternak's notes on these occasions are of minor significance, since a review of the ALJ's decision reveals that he did not ignore this evidence; to the contrary, the ALJ specifically noted similar findings reflected in other treatment notes on different dates. For example, while the ALJ did not specifically mention that Carter was sleeping 18 hours per day, he did recognize that she suffered from fatigue, a lack of motivation, and was spending all her free time in bed (AR 17-18). The ALJ also recognized that she suffered from periods of confusion since this was also documented in other treatment notes on different dates (AR 17-18). The fact that the ALJ did not specifically mention these visits in making his disability determination is of no moment, since this evidence was specifically considered by the ALJ. We therefore find no error in this regard.

Carter further claims that the ALJ selectively read the medical records in rejecting Dr. Pasternak's medical opinion. We note that a treating physician's opinion is given controlling weight only when it is well-supported and consistent with the other evidence of record, *see* 20 C.F.R. § 404.1527(d)(2), and may only be rejected on the basis of contradictory medical testimony. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988). When medical testimony conflicts or is inconsistent, the ALJ is required to choose between them. *Cotter*, 642 F.2d at 705. In making that choice, a treating physician's conclusions are to be examined carefully and accorded more weight than a non-treating physician's opinion. *Podedworny v. Harris*, 745 F.2d

210, 217 (3rd Cir 1984). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

Here, Dr. Pasternak completed a medical source statement relative to Carter's ability to engage in work-related activities. This form required Dr. Pasternak to rate Carter's abilities as being either "unlimited," "good," "fair," "poor" or "none" in each of the relevant subcategories (AR 184). The form defined the terms as follows:

> Unlimited - ability to function in this area is not limited by a mental impairment.
>
> Good - ability to function in this area is more than satisfactory.
>
> Fair - ability to function in this area is limited, but satisfactory.
>
> Poor - ability to function in this area is seriously limited, but not precluded.
>
> None - no useful ability to function in this area.

(AR 184). Dr. Pasternak opined in December 2003 that Carter had a good ability to follow work rules; a fair ability to relate to coworkers, interact with supervisors, function independently, understand, remember, and carry out simple job instructions, maintain personal appearance, and behave in an emotionally stable manner; a poor ability to deal with the public, use judgment, deal with work stresses, maintain attention/concentration, relate predictably in social situations and demonstrate reliability; and no ability to understand, remember, and carry out complex job instructions (AR 184-185). Dr. Pasternak also opined that Carter continued to have periods of confusion and was easily overwhelmed by stress, becoming unable to function (AR 185). The ALJ reasoned that Dr. Pasternak's December 2003 opinion was inconsistent with her own progress notes, and inconsistent with her medical opinion rendered in March 2003 (AR 20). The ALJ concluded that Carter was not disabled based upon a review of the medical evidence, as well as Carter's testimony and demeanor at the hearing, and the state agency psychologist's opinion that she was not disabled (AR 20).

Carter first criticizes the ALJ's finding that Dr. Pasternak's opinion was inconsistent with her treatment notes. She contends that such finding was based upon the ALJ's selective

14

utilization of Dr. Pasternak's treatment notes. We disagree. While the ALJ did not specifically mention the entire treatment note entry in discounting Dr. Pasternak's opinion, fairly read, Dr. Pasternak's treatment notes overall reflect that Carter's condition continued to improve. As noted by the ALJ, following adjustments to her medication regime, Carter reported feeling quite a bit better and Dr. Pasternak reported her mood as good and stable (AR 193). Her depression was mostly gone, her mood swings were under control and she was sleeping less (AR 189). When most recently seen by Dr. Pasternak in November 2003, the ALJ observed that she had good results with her current medication regime, denied fatigue, and only had confusion once a week which was not severe in nature (AR 187).

Further, as noted by the ALJ, Dr. Pasternak's December 2003 opinion was inconsistent with her March 2003 opinion. In March 2003, Dr. Pasternak opined that Carter had a <u>good</u> ability to maintain personal appearance; a <u>fair</u> ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, maintain attention/concentration, understand, remember, and carry out simple job instructions, relate predictably in social situations, and demonstrate reliability; and a <u>poor</u> ability to deal with work stresses, function independently, understand, remember, and carry out complex job instructions and behave in an emotionally stable manner (AR 146-147). Despite the fact that Dr. Pasternak's treatment notes from March 2003 until December 2003 showed a consistent improvement in her condition, the December 2003 opinion showed a deterioration in her condition. Notably, during the November 2003 office visit, upon which the December 15, 2003 opinion was based, Carter herself professed improvement in her condition. She reported feeling "pretty good," denied feeling overly tired, and denied any depression (AR 187). She only suffered from confusion about once a week which was not severe (AR 187). Dr. Pasternak indicated that her affect was more reactive than it had been and she exhibited more spontaneous speech, and that her bipolar disorder was "now doing better" with a decrease in her antipsychotic medications (AR 187). Thus, as implicitly recognized by the ALJ, there is an inconsistency between Dr. Pasternak's December 15, 2003 opinion and Carter's condition when last seen by her on November 3, 2003.

Carter claims that the ALJ should have sought clarification of Dr. Pasternak's opinion. The ALJ, however, apparently felt that the record was sufficiently developed for purposes of

ruling on Carter's claim. Section 416.912(e)(1) provides that the Administration will take action to re-contact medical sources and obtain additional medical information where the existing evidence is insufficient to determine whether a claimant is disabled. 20 C.F.R. § 416.912(e)(1). We believe the ALJ could permissibly render a decision based upon the evidence in the present record without further development and, therefore, find no error in the ALJ's failure to re-contact Dr. Pasternak for further clarification under the circumstances here.

Carter further challenges the ALJ's reliance on the state agency psychologist's opinion in concluding that she was not disabled. Dr. Smith concluded that Carter was not significantly limited in a number of areas, and was only moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; accept criticism from supervisors; get along with coworkers; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation (AR 133-134).

It is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan,* 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence). The Commissioner's regulations do acknowledge that, as a general principle, opinions from examining sources are given more weight than opinions from non-examining sources. *See* 20 C.F.R. § 404.1527(d)(1). However, this is merely a general guideline; it does not require that, in every case, an examining physician's medical opinion must, as a matter of law, be favored over that of a non-examining physician. Instead, the Commissioner must consider a number of competing factors, such as the extent to which there is a treating relationship, the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's

opinion is consistent with the entirety of the evidence. *See generally id.* at § 404.1527(d)(1)-(6). The ALJ concluded that Dr. Pasternak's opinion was inconsistent with her treatment notes and previous opinion, and considered Dr. Smith's assessment reasonable in light of the evidence in the record (AR 20). Since the ALJ analyzed the medical evidence consistent with the required standards, we find that his determination is supported by substantial evidence.

Finally, Carter argues that the ALJ impermissibly relied on her daily activities in concluding that she was not disabled. She further argues that he selectively reviewed her abilities. Carter cites cases from this circuit for the proposition that her involvement in sporadic and transitory household activities cannot be used to show ability to engage in substantial gainful work activity. For example, in *Smith v. Califano,* 367 F.2d 968 (3rd Cir. 1981), the ALJ relied on "sporadic and transitory activities" to demonstrate plaintiff's ability to engage in substantial gainful activity and did not point to any medical testimony to corroborate his finding of not disabled. *Id.* at 972. The court stated, "It is well established that sporadic or transitory activity does not disprove disability." *Id.* Rather, to disprove disability, the ALJ must cite to medical evidence that supports a finding of not disabled. *Id.*

Hence, an ALJ cannot rely solely on his or her interpretations of the claimant's demeanor and testimony to prove that the claimant is not disabled. *See Frankenfield,* 861 F.2d at 408; *Smith*, 637 F.2d at 972. He or she cannot simply disregard medical evidence to the contrary by pointing to activities in which the claimant has been engaging. *Id.* The ALJ must instead use medical evidence that corroborates his finding. *Id.*

In this case, while Carter is correct that the ALJ cited her daily activities to support his conclusion, his conclusion was also supported by medical evidence. Thus, the daily activities listed by the ALJ were not the basis for his conclusion that Carter was not disabled, they merely supported it. We therefore find no error in this regard.

### IV. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET A. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-291 Erie |
| ) | |
| v. ) | |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

AND NOW, this 26th day of October, 2005, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Margaret A. Carter. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>
United States District Judge

cc: All parties of record.